IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BOBBIE A. BURNETT,

        Plaintiff,

v.                                                                                            CIV 02-1232 KBM

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Plaintiff's motion to reverse or remand, where she asserts that the ALJ committed three errors: (1) incorrectly concluded Plaintiff did not meet two Listings pertaining to arthritis; (2) erred in his credibility assessment; and (3) erroneously failed to order a psychiatric consultation. *See Docs. 12, 13.* Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. I find that the motion should be granted in part and accordingly remand the matter to the Commissioner for further proceedings.

### I. Procedural Background

Plaintiff Bobbie Burnett moved frequently and worked for a number of different organizations primarily in administrative/clerk/cashier type positions, but also as a healthcare aid and housekeeper. Born on August 27, 1944, she last worked as a cashier in May 1996 at age fifty-one. *See e.g., Administrative Record* ("*Record*") at 108, 117, 121, 123-25, 158. Burnett asserts that she became disabled in late 1993 or early 1994 due to various ailments including

asthma, high blood pressure, diabetes, arthritis, and depression.  *See e.g., id.* at 117, 122, 130, 132, 134, 136, 138-40, 142, 144, 148, 150, 151, 153.

The first Administrative Law Judge assigned to the matter found that Plaintiff's poor eyesight precluded her from returning to her past relevant work and issued a decision denying benefits at Step 5 based on the Medical-Vocational Rule 202.14 or the "Grids."  The Appeals Council remanded in 2000 because the first ALJ did not consider poor eyesight as a nonexertional impairment and did not call a vocational expert as required.  *See id.* at 267-70, 279-80.

After remand, ALJ Gary L. Vanderhoof presided over the matter.  He held his own hearing and noted that a consultative eye examination after remand revealed corrected 20/20 vision with the prescription she was given for glasses.  *See id.* at 17, 49-87, 292-39.  With the aid of testimony from a vocational expert, ALJ Vanderhoof found, among other things, that Plaintiff has the residual functional capacity to "lift and carry 20 pounds occasionally, 10 pounds frequently, but no ability to climb but can occasionally stoop and crawl, and must avoid poorly ventilated work spaces."  *Id.* at 18.  He therefore concluded that Burnett could therefore return to her past relevant work as clerk and cashier and, accordingly found her not disabled at Step 4.  *See id.*  After reviewing additional evidence presented, the Appeals Council declined review on July 26, 2002, thereby rendering ALJ Vanderhoof's decision final.  *Id.* at 7-8; *see also id.* at 352-57.

## II.  Factual Background Regarding Plaintiff's Depression

Plaintiff complained of depression as a disabling impairment.  *See e.g., Record* at 117 ("I am mentally depressed.").  Although Defendant contends that "the last mention of depression in the treatment notes is dates September 15, 1997, nearly four years prior to [ALJ Vanderhoof's] decision," *Doc. 14* at 10, my review of the record reveals otherwise.

Plaintiff's medical records do show that her treating physician first referred her to a social worker therapist for depression in the Fall of 1995. The therapist found social stressors precipitated the depression. A month later, Plaintiff reported to her physician that she was "recovering nicely" from grief associated with the loss of her father and that her counseling sessions were "going quite well."[1] However, two months later, in December 1996, Plaintiff was hospitalized with possible pneumonia. The discharge summary from that hospitalization lists depression as a diagnosis upon admission and upon discharge. *Record* at 201. Her doctor's plan regarding her depression was that he "will continue to discuss this [the depression] with the patient and encourage her to be started on medical treatment and to seek counseling." *Id.* at 202.

Medical records from the Fall of 1996 show that Plaintiff reported decreased energy, crying spells, loss of weight, and insomnia. At that point her physician diagnosed her with "clinical" depression "on and off for the past six months" and prescribed Amitriptyline, an antidepressant medication. *See id.* at 186, 301; *see also www.medterms.com.* At some point Plaintiff began taking Trazodone, which is also an antidepressant. *See www.medterms.com.*

---

[1] *See Record* at 169 (9/11/95; Plaintiff visits doctor "for a 'rev and therapy counseling' [illegible] still feeling blue re: financial difficulty and father's illness [with] cancer;" assessment/plan was "depression – situational; [follow up with] L. Thompson," the social worker); *id.* at 167 (9/1?/95; Plaintiff's doctor notes Plaintiff "wishes to have a counselor to talk about 'stuff' – but <u>very</u> reluctant to get into it today;" assessment/plan states "? social vs. mental need for counselor. Appt [with] L. Thomson for evaluation +/- referral."); *id.* at 166 (9/12/95; doctor notes Plaintiff is "depressed re: finances & father dying from [cancer]" and referred her to follow up with "L Thompson" for depression."); *id.* at 170 (9/12/95; Plaintiff session with therapist; Plaintiff "discussed difficulties [with] getting a job, financial situation, payment for medicines, has suicidal thoughts at times but no plan, has no friends, her father has cancer, sister died last year, another sister is ill, she's oldest in family;" during the visit Plaintiff "talked [and] cried intermittently during 30 minute interview;" therapist assessed her with "depression related to social tension, grief [and] loss issues, financial stress, some anger about physical changes in her own body [and] isolation," set an appointment for counseling two days later, and noted Plaintiff promised to call if she was feeling suicidal in the interim); *id.* at 172 (10/26/95; doctor noted that Plaintiff "states that she is doing quite well. She recently lost her Father but seems to be recovering nicely from this. She feels that the counseling sessions with Ms. Thompson are going well for her.").

When she was hospitalized again in February 1997 for hypoxia, for example, the discharge summary from that hospitalization also lists depression as a diagnosis upon admission and upon discharge. *See Record* at 196; *see also id.* at 198 ("Patient is a 52-year old female with a history of COPD, hypertension, diabetes mellitus, depression and post menopausal [and takes] Trazodone 50 mg q.d."). The plan upon her discharge indicates that "[d]epression with insomnia – patient states that she is sleeping much better with the Trazodone 50 mg. q. hs and is doing ***somewhat better*** overall." *Id.* at 200 (emphasis added).

In March 1997, her doctor indicated that while the Trazadone worked for Plaintiff's insomnia, but that her depression continued.[2] He made the same observation the following month: Plaintiff was "sleeping OK, but not well. Depression [with] stress at home" and the doctor "increased her Trazadone to "75 the 100 QHS if no improvement 1 week" *Id.* at 231.

The following month, in May 1997, consultative physician Dr. Leonore A. Herrera examined Plaintiff. Her report states that Plaintiff reported "chronic depression and takes [T]razodone. She has never been hospitalized and is not suicidal." *Id.* at 220. Dr. Herrera's final diagnosis regarding depression was: "[h]istory of depression on medications. The patient has not been hospitalized for this and ***did not display clinically, during today's exam, any significant abnormalities that would alert the examiner for the need for further intervention in this area.***" *Id.* at 223. Thereafter, Plaintiff continued taking Trazadone for depression and insomnia. *See id.* at 225.

---

[2] Notes indicate that Plaintiff was sleeping well with the Trazadone and for her "depression [she is to] cont[inue] Trazadone . . . for sleep [and] to SSRI in a.m. next visit." *See id.* at 175, 294. "SSRI" is the "[a]bbreviation for selective serotonin reuptake inhibitors, commonly prescribed drugs for treating depression." *www.medterms.com.* It is unclear, however, whether she was prescribed or tried this type of medication.

4

Just before the first ALJ held his hearing, Plaintiff's treating physician wrote a "to whom it may concern" letter, which mentioned certain of Plaintiff's ailments and opined that he did "not expect any significant improvement in the future." *Id.* at 250. This letter, however, does not include depression among those aliments.

According to the transcript of the first hearing, Plaintiff was represented by an attorney. *See id.* at 28. There is nothing in the file indicating that this attorney requested the first ALJ to secure a psychological consultative examination, and Plaintiff was not questioned about depression at that hearing by either the attorney or the ALJ. The first ALJ did fill out a Psychiatric Review Technique Form ("PRT form"), finding situational depression present but that it had no relevant limiting effect. *See id.* at 271-73. Furthermore, his December 1998 decision found that depression did not survive Step 2 and Step 3 of the sequential analysis, reasoning that:

> The claimant requested counseling in August 1995 (Exh. 1F-8). She saw a counselor who diagnosed depression related to her social situation (Exh., 1F-11). Notes in 1996 show that she had depression on and off (ex. 2F-13). In 1997 she continued to take medications for sleep. (Ex. 2F-2). Her condition improved when her living conditions changed (Exh. 7F-5). The only counseling she received was from a social worker, not a recognized medical source. Her condition was controlled with medication for all continuous 12 month periods at issue. I find that the claimant has failed to establish a mental or emotional impairment which had more than a minimal effect on her ability to work for any continuous 12 month period at issue. I will consider the combined effect of her impairments below [in the Step 3 analysis]. . . . Her depression has not effected [sic] her daily activities, social functioning, ability to concentrate, or cause decompensation and thus does not comport with the requirements of § 12.04 (See attached PRT form).

*Id.* at 268.

Plaintiff's present attorney was appointed just after the first decision was issued, but it is

not clear from the record whether he pursued Plaintiff's appeal to the Appeals Council. *See id.* at 25, 277. While the matter was on appeal, Plaintiff's treating physician wrote another "to whom it may concern" letter. This time, the February 25, 1999 letter mentioned Plaintiff's depression by stating that Plaintiff's various physical ailments are "exacerbate[d] by chronic . . . depression . . . [and] that these diseases qualify her as disabled." *Id.* at 321. Thereafter, because of financial constraints Plaintiff was not taking any of her medications, including Trazadone, and her doctor assessed her with insomnia. *See id.* at 323.

### III.  Analysis

If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *E.g., Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1497-1500 (10th Cir. 1992). My assessment is based on a review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency. *E.g., Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991).

I have read and carefully considered the entire record and the parties' well-written briefs. I agree with the position set forth by Defendant in its response that Plaintiff's motion should be denied as to her Listings argument, and adopt that reasoning and the authorities cited therein by reference. *See Doc. 14.* Although I do not necessarily disagree with Defendant's substantive arguments on the other two issues, I am compelled to remand the matter for further proceedings for two reasons. First, ALJ Vanderhoof did not follow the "special technique" required when a mental impairment is at issue. Second, because of the way the opinion is written, I cannot meaningfully review the issue of whether ALJ Vanderhoof erred in failing to order a psychiatric

consultation.

### *A.  ALJ Vanderhoof Did Not File A PRT Form*

After the Appeals Council vacated and remanded the first decision, ALJ Vanderhoof likewise held a hearing, but neither he nor Plaintiff's new attorney inquired about Plaintiff's depression.  As before, there is nothing in the record indicating that counsel requested ALJ Vanderhoof to secure a psychological consultative examination.

Furthermore, ALJ Vanderhoof did not execute a PRT form under 20 C.F.R. § 1520a.  That regulation provides that when the Administration evaluates the severity of mental impairments, it "must follow a special technique at each level in the administrative review process."  *Id.,* § 404.1520a(a).  The ALJ must first identify whether there is a need for additional evidence to determine the severity of the alleged mental impairment.  Next, he must evaluate the functional consequences of the mental impairment vis-a-vis the claimant's ability to work.  Finally, the ALJ must organize and present his findings in "a clear, concise, and consistent manner."  *Id.,* §§ 404.1520a(a)(1)-(3).  "At the administrative law judge hearing . . . level[], the written decision issued by the administrative law judge . . . must incorporate the pertinent findings and conclusions based on the technique."  *Id.,* § 404.1520a(e)(2).  This contemplates completion of the PRT form, either with or without the assistance of a medical expert.  *Id.,*
§ 404.1520a(e)(3).

If ALJ Vanderhoof intended to rely upon the prior ALJ's analysis and PRT form, and assuming he could properly do so, his opinion does not indicate any such reliance.  To the contrary, ALJ Vanderhoof reached a different conclusion the severity of depression than the first ALJ reached by concluding that Plaintiff's depression was severe at Step 2.  *See id.* at 16.  Yet,

7

ALJ Vanderhoof's opinion contains no discussion of depression beyond the cursory Step 2 finding. In light of the absence of a PRT form or equivalent discussion in the opinion, I cannot tell precisely what ALJ Vanderhoof concluded about Plaintiff's depression.

### B. Psychiatric Consultation

An ALJ is not necessarily required to complete the PRT form with the assistance of a medical expert. If the record contains sufficient medical evidence for the ALJ to make an informed decision about the alleged mental impairment, it is within the ALJ's discretion not to order a consultative examination. *See, e.g., Hawkins v. Chater,* 113 F.3d 1162, 1167 (10th Cir. 1997) (and 20 C.F.R. § 404.1519a(b) cited therein); *Torres v. Secretary of Health & Human Servs.,* 1994 WL 47166 9 * 3 (10th Cir. 1994) (affirming decision from this Court and citation to decisions from the Eighth and Fifth Circuits therein). Indeed, the examining physician who evaluated Plaintiff's physical impairments was of the opinion a further consultation was not required. Furthermore, neither of her attorneys requests any such consultation either before or after remand. The absence of a request by counsel is highly relevant to the failure to call a consultant issue. *See Hawkins v. Chater,* 113 F.3d 1162, 1168 (10th Cir. 1997) ("In the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record.").

While my own review of the substantiality of medical evidence coupled with the absence of a request from counsel would lead me to conclude that the merits of the need for consultation argument are dubious, I cannot substitute my judgment for that of the ALJ. And, since I cannot tell from the opinion what ALJ Vanderhoof concluded about the evidence concerning Plaintiff's depression, regretfully, I cannot meaningfully review the parties' contentions concerning whether

he erred in failing to arrange a consultative psychiatric examination under the above standards.

The deficiencies in opinion writing compel a remand for further proceedings. Since resolution of the severity of Plaintiff's depression and the psychiatric consultation issue could impact the credibility analysis on remand, I make no determination of the credibility issue here.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion is granted in part, and this matter is remanded to the Commissioner for further proceedings. A final order will enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.